1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER CANTU, et al., | Case No. 1:20-cv-00538-NONE-SAB |
| Plaintiffs, | FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS AND GRANTING DEFENDANT NAPHCARE'S MOTION TO DISMISS |
| v. | |
| KINGS COUNTY, et al., | |
| Defendants. | (ECF Nos. 6, 8, 10, 11, 12, 17, 18) |
| | OBJECTIONS DUE WITHIN FOURTEEN DAYS |

Currently before the Court are two motions to dismiss filed by Kings County, David Robinson, Kings County Sheriff, Kings County Sheriff Department (hereafter "County Defendants"), and NaphCare, Inc. (hereafter "Defendant NaphCare"). (ECF Nos. 6, 10.) The matters have been referred to a United States magistrate judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 302. (ECF No. 15.) The Court, having reviewed the record, finds these matters suitable for decision without oral argument. *See* Local Rule 230(g).

## I.

## PROCEDURAL HISTORY

On April 14, 2020, Roger Cantu, Linda Brown, and minor G.C. ("Plaintiffs") filed this civil rights action pursuant to 42 U.S.C. § 1983 against County Defendants, and NaphCare.

1   (ECF No. 1.)   On April 16, 2020, the Court granted Maryzol Jones petition to be appointed as

2   guardian ad litem for minor Plaintiff G.C.  (ECF Nos. 2, 5.)

3       On May 22, 2020, the County Defendants filed a motion to dismiss.  (ECF No. 6.)

4   Plaintiffs filed an opposition to the County Defendants' motion to dismiss on June 1, 2020.

5   (ECF no. 8.)  On June 10, 2020, Defendant NaphCare filed a motion to dismiss.  (ECF No. 10.)

6   On June 17, 2020, Plaintiffs filed an opposition to Defendant NaphCare's motion to dismiss.

7   (ECF No. 11.)  The County Defendants filed a reply to Plaintiff's opposition to their motion to

8   dismiss on June 30, 2020.  (ECF No. 12.)  On January 26, 2021, both motions to dismiss were

9   referred to the undersigned.  (ECF No. 15.)

10      On February 5, 2021, an order was filed requiring the parties to supplement the County

11  Defendants' motion to dismiss.  (ECF No. 16.)  County Defendants filed a supplemental brief on

12  February 19, 2021, and Plaintiffs filed a supplemental brief on February 26, 2021.  (ECF Nos.

13  17, 18.)

14                                      **II.**

15                         **COMPLAINT ALLEGATIONS**

16      Gregory Cantu ("Decedent") had a history of seizures that were treated with prescription

17  medication.   (Compl., ¶ 23, ECF No. 6.)   Sometime around February 2019, Decedent was

18  arrested in Maricopa County, Arizona while crossing the border.  (Id., ¶ 24.)  While Decedent

19  was incarcerated in Maricopa County, Plaintiffs believe he was receiving his anti-seizure

20  medication.  (Id., ¶ 25.)  After he completed his incarceration in Maricopa County, Decedent was

21  transferred to the Kings County Jail for outstanding warrants that had been issued for violation of

22  his parole.  (Id., ¶ 26.)  Decedent arrived at the Kings County Jail around March 1, 2019.  (Id., ¶

23  27.)   Decedent was not given his anti-seizure medication after he was transferred to Kings

24  County Jail.  (Id., ¶ 28.)  For six weeks, Decedent told sheriff deputies and the medical staff at

25  the Kings County Jail that he needed his anti-seizure medication, but no anti-seizure medication

26  was provided.  (Id., ¶ 29.)  Decedent repeatedly told his parents Plaintiffs Cantu and Brown that

27  the staff at the Kings County Jail were not giving him his anti-seizure medications and begged

28  them to call the jail.  (Id., ¶ 30.)  Decedent's parents called the jail multiple times to inform them

of Decedent's history of severe seizures and his need for anti-seizure medication.  (Id., ¶ 31.)  On April 15, 2019, Decedent was found dead from a seizure.  (Id., ¶ 32.)

Plaintiff's first cause of action alleges denial of medical care in violation of the Eighth Amendment against all defendants.  (Id., ¶¶ 33-39.)  Plaintiffs allege that Defendants should have known that Decedent was in danger of serious harm to his health and safety due to his documented medical history of serious seizures and need for medication, his repeated requests for anti-seizure medication, and the phone calls from his parents.  (Id., ¶ 34.)  Plaintiffs allege that Defendants ignored medical symptoms that were obvious and an immediate threat to Decedent's health and safety.  (Id., ¶ 35.)  Defendants failed to provide Decedent with necessary evaluation and treatment.  (Id., ¶ 36.)  Defendants failed to provide Decedent with timely and adequate medical care, medication, and to take other measures to protect him from serious harm which constitutes deliberate indifference to Decedent's serious medical needs.  (Id., ¶ 37.)

Plaintiff's second cause of action alleges an unconstitutional policy against all defendants.  (Id., ¶¶ 40-51.)  Plaintiff alleges that unidentified supervisors, employees, agents, and independent contractors, acting under color of law, acted on an expressly adopted official policy or long standing practice or custom of Kings County, the Kings County Sheriff's Department, and NaphCare.  (Id., ¶¶ 41, 42.)  These unidentified individuals were not disciplined, reprimanded, retrained, suspended, or otherwise penalized in connection with Decedent's death.  (Id., ¶ 43.)  The acts and omissions of the defendants were deliberately indifferent to Decedent's serious medical needs and were a direct and proximate result of the customs and practices or lack thereof of the defendants.  (Id., ¶ 44.)  The defendants maintained the following unconstitutional customs, practices, and policies of an ongoing pattern of deliberate indifference to serious medical needs of Kings County Jail inmates: including a failure to implement an appropriate medical screening program; failure to provide for assessments of at risk arrestees; failure to provide adequate staffing and training at Kings County Jail for providing inmates with appropriate medical care and treatment; failure to implement a policy to ensure that staff perform timely and appropriate health checks to screen for serious medical conditions; a failure to create or implement guidelines to ensure quality care for inmates with known medical

conditions; a failure to adequately train and supervise employees or agents to prevent the occurrence of the alleged constitutional violations; maintaining grossly inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by Kings County, the Kings County Sheriff's Department, and NaphCare employees and agents; and a failure to promulgate appropriate policies or procedures or take other measures to prevent the alleged constitutional violations from occurring.  (Id., ¶ 45.)  By perpetrating, sanctioning, tolerating and ratifying the outrageous conduct and other wrongful acts, Defendants acted with intentional, reckless, and callous disregard for the life of Decedent and his parents.  (Id., ¶ 48.)

Plaintiff's third cause of action alleges loss of parent/child relationship in violation of the substantive due process guarantees of the Fourteenth Amendment against all defendants.  (Id., ¶¶ 52-56.)  Plaintiff alleges that Defendants were deliberately indifferent by failing to summon or provide medical care, and or take other measures to prevent Decedent's death after noticing his suicidal impulses, perform safety checks, suicidal condition and or need for medical attention, which deprived the plaintiffs of their liberty interest in a child-parent and parent child relationship.[1]  (Id., ¶ 53.)

Plaintiff's fourth cause of action alleges a failure to supervise, investigate and discipline against all defendants in violation of the Constitution.  (Id., ¶¶ 57-64.)  Plaintiff alleges that the constitutional violations were a result of Defendants' failure to adequately supervise, investigate, and discipline employee conduct.  (Id., ¶ 58.)  Defendants failed to adequately supervise, investigate, and discipline subordinate employees in regard to preventing deliberate indifference to serious medical needs of inmates at the Kings County Jail.  (Id., ¶ 59.)  The failure to supervise, investigate, and discipline employees amounted to deliberate indifference to inmates' rights to be free from deliberate indifference to their serious medical needs, health and safety.  (Id., ¶ 60.)

Plaintiff's fifth cause of action alleges a violation of the Americans with Disabilities Act

---

[1] The Court assumes that the references to suicidal impulses, perform safety checks, and address a suicidal condition were included in the complaint in error based on the other allegations which are alleging a failure to treat Decedent for his seizure disorder which is alleged to be the cause of death.

1  ("ADA") against all defendants.  (Id., ¶¶ 65-74.)  Defendants knew that Decedent suffered from

2  a seizure disorder and had been notified by Decedent and his family of the seizure disorder and

3  need for medication.  (Id., ¶¶ 66, 67.)  Plaintiffs contends that Defendants failed to provide any

4  reasonable accommodation in violation of the ADA.  (Id., ¶ 68.)  Defendants had a duty to

5  comply with the ADA prohibiting discrimination against persons with a disability.  (Id., ¶ 69.)

6         Plaintiffs sixth cause of action alleges wrongful death: negligence against all defendants

7  in violation of state law.  (Id., ¶ 75-82.)  Defendants have a duty to use reasonable care to prevent

8  harm or injury to others, including basic medical care.  (Id., ¶ 76.)  Defendant breached this duty

9  of care.  (Id., ¶ 77.)  Defendants were negligent and reckless by: failing to properly and

10  adequately access Decedent's existing medical condition; failing to properly and adequately

11  assess Decedent's need for medication; failing to provide prompt medical care; failing to

12  properly train and supervise employees; failing to ensure that an adequate number of employees

13  with appropriate education and training were available to meet the need and protect the rights of

14  Decedent; and negligent handling of evidence and witnesses.  (Id., ¶ 78.)  Due to the negligent

15  conduct, Decedent died.  (Id., ¶ 79.)  The county is vicariously liable for the wrongful acts of the

16  defendants pursuant to sections 815.2 and 815.4 of the California Government Code.  (Id., ¶ 81.)

17         Plaintiffs seek monetary damages.  (Id., p. 15.)

18  **III.**

19  **LEGAL STANDARDS**

20  **A.    Motion to Dismiss**

21         Under Federal Rule of Civil Procedure 12(b)(6), a party may file a motion to dismiss on

22  the grounds that a complaint "fail[s] to state a claim upon which relief can be granted."  A

23  motion to dismiss pursuant to Rule 12(b)(6) tests the legal sufficiency of the complaint.  Navarro

24  v. Block, 250 F.3d 729, 732 (9th Cir. 2001).  In deciding a motion to dismiss, "[a]ll allegations

25  of material fact are taken as true and construed in the light most favorable to the nonmoving

26  party."  Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996).  The pleading

27  standard under Rule 8 of the Federal Rules of Civil Procedure does not require " 'detailed factual

28  allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me

1    accusation." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting <u>Bell Atlantic Corp. v.</u>

2    <u>Twombly</u>, 550 U.S. 544, 555 (2007)).   In assessing the sufficiency of a complaint, all well-

3    pleaded factual allegations must be accepted as true.   <u>Iqbal</u>, 556 U.S. at 678-79.   However,

4    "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory

5    statements, do not suffice." <u>Id.</u> at 678.   To avoid a dismissal under Rule 12(b)(6), a complaint

6    must plead "enough facts to state a claim to relief that is plausible on its face." <u>Twombly</u>, 550

7    U.S. at 570.

8         In deciding whether a complaint states a claim, the Ninth Circuit has found that two

9    principles apply.   First, to be entitled to the presumption of truth the allegations in the complaint

10   "may not simply recite the elements of a cause of action, but must contain sufficient allegations

11   of underlying facts to give fair notice and to enable the opposing party to defend itself

12   effectively." <u>Starr v. Baca</u>, 652 F.3d 1202, 1216 (9th Cir. 2011).   Second, so that it is not unfair

13   to require the defendant to be subjected to the expenses associated with discovery and continued

14   litigation, the factual allegations of the complaint, which are taken as true, must plausibly

15   suggest an entitlement to relief.   <u>Starr</u>, 652 F.3d at 1216.   "Dismissal is proper only where there

16   is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable

17   legal theory." <u>Navarro</u>, 250 F.3d at 732 (citing <u>Balistreri v. Pacifica Police Dept.</u>, 901 F.2d 696,

18   699 (9th Cir. 1988)).

19         **B.      Deliberate Indifference in Violation of the Eighth Amendment**

20         The Eighth Amendment's prohibition against cruel and unusual punishment protects

21   convicted prisoners.   <u>Bell v. Wolfish</u>, 441 U.S. 520, 535 (1979); <u>Graham v. Connor</u>, 490 U.S.

22   386, 395 n.10 (1989).   Although prison conditions may be restrictive and harsh, prison officials

23   have a duty to ensure that prisoners are provided adequate shelter, food, clothing, sanitation,

24   medical care, and personal safety, <u>Johnson v. Lewis</u>, 217 F.3d 726, 731 (9th Cir. 2000)

25   (quotation marks and citations omitted), but not every injury that a prisoner sustains while in

26   prison represents a constitutional violation, <u>Morgan v. Morgensen</u>, 465 F.3d 1041, 1045 (9th

27   2006) (quotation marks omitted).

28         To maintain an Eighth Amendment claim, a prisoner must show that prison officials were

deliberately indifferent to a substantial risk of harm to his health or safety.  See, e.g., Farmer v. Brennan, 511 U.S. 825, 847 (1994); Thomas v. Ponder, 611 F.3d 1144, 1150-51 (9th Cir. 2010); Foster v. Runnels, 554 F.3d 807, 812-14 (9th Cir. 2009); Morgan, 465 F.3d at 1045; Johnson, 217 F.3d at 731; Frost v. Agnos, 152 F.3d 1124, 1128 (9th Cir. 1998).  The Eighth Amendment entitles inmates to medical care and is violated when a prison official acts with deliberate indifference to an inmate's serious medical needs.  Snow v. McDaniel, 681 F.3d 978, 985 (9th Cir. 2012), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082-83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012); Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006).

To state a claim a plaintiff "must show (1) a serious medical need by demonstrating that failure to treat [his] condition could result in further significant injury or the unnecessary and wanton infliction of pain," and (2) that "the defendant's response to the need was deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  "Deliberate indifference is a high legal standard," Simmons v. Navajo County Ariz., 609 F.3d 1011, 1019 (9th Cir. 2010); Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown by "(a) a purposeful act or failure to respond to a prisoner's pain or possible medical need, and (b) harm caused by the indifference."  Wilhelm, 680 F.3d at 1122 (citing Jett, 439 F.3d at 1096).  In order to state a deliberate indifference claim, the plaintiff must allege facts sufficient to support a claim that prison officials knew of and disregarded a substantial risk of serious harm to the plaintiff.  Farmer, 511 U.S. at 847; Frost, 152 F.3d at 1128.

The requisite state of mind is one of subjective recklessness, which entails more than ordinary lack of due care.  Snow, 681 F.3d at 985 (citation and quotation marks omitted); Wilhelm, 680 F.3d at 1122.  Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action."  Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle v. Gamble, 429 U.S. 97, 105-06 (1976)).  "Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."  Estelle, 429 U.S. at 106; Snow, 681 F.3d at 987-88; Wilhelm, 680 F.3d at 1122 ("The deliberate indifference doctrine is limited in scope.").

1

### C.     Supervisory Liability

"Under Section 1983, supervisory officials are not liable for actions of subordinates on any theory of *vicarious liability*."  Crowley v. Bannister, 734 F.3d 967, 977 (9th Cir. 2013) (citation and internal quotation marks omitted); Iqbal, 556 U.S. at 676.  "A supervisor may be liable only if (1) he or she is personally involved in the constitutional deprivation, or (2) there is 'a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation.'"  Crowley, 734 F.3d at 977 (citation and internal quotation marks omitted).  "Under the latter theory, supervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of a constitutional violation."  Id.

### D.     Municipal Liability

A local government unit may not be held responsible for the acts of its employees under a *respondeat superior* theory of liability.  Monell v. Department of Social Services, 436 U.S. 658, 691 (1978).  Rather, a local government unit may only be held liable if it inflicts the injury complained of through a policy or custom.  Waggy v. Spokane County Washington, 594 F.3d 707, 713 (9th Cir. 2010).  A municipality can only be held liable for injuries caused by the execution of its policy or custom or by those whose edicts or acts may fairly be said to represent official policy.  Monell, 436 U.S. at 694.  Generally, to establish municipal liability, the plaintiff must show that a constitutional right was violated, the municipality had a policy, that policy was deliberately indifferent to plaintiff's constitutional rights, and the policy was "the moving force" behind the constitutional violation.  Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown, 520 U.S. 397, 400 (1997); Burke v. County of Alameda, 586 F.3d 725, 734 (9th Cir. 2009); Gibson v. County of Washoe, Nev., 290 F.3d 1175, 1185-86 (9th Cir. 2002).  "The custom or policy must be a 'deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.' "  Castro v. Cty. of Los Angeles, 833 F.3d 1060, 1075 (9th Cir. 2016) (quoting Pembaur v. City of Cincinnati, 475 U.S. 469, 483 (1986)).

/ / /

### E.      Americans with Disabilities Act

The ADA provides that public entities are prohibited from discriminating against qualified individuals because of a disability and excluding such individuals from benefitting from or participating in a public program because of their disability.  42 U.S.C. § 12132.  The ADA applies to state prisons.  Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 213 (1998); Castle v. Eurofresh, Inc., 731 F.3d 901, 909 (9th Cir. 2013).  "To state a claim under Title II of the ADA, the plaintiff must allege: (1) he is an individual with a disability; (2) he is otherwise qualified to participate in or receive the benefit of some public entity's services, programs, or activities; (3) he was either excluded from participation in or denied the benefits of the public entity's services, programs, or activities, or was otherwise discriminated against by the public entity; and (4) such exclusion, denial of benefits, or discrimination was by reason of [his] disability."  Simmons, 609 F.3d at 1021 (quoting McGary v. City of Portland, 386 F.3d 1259, 1265 (9th Cir. 2004)); Thompson v. Davis, 295 F.3d 890, 895 (9th Cir. 2002).  A prison's deliberate refusal to accommodate disability related needs, such as providing medical care, can violation the ADA.  United States v. Georgia, 546 U.S. 151, 157 (2006).  However, the ADA does not create a remedy for medical malpractice and the ADA does not prohibit inadequate treatment for disability.  Simmons, 609 F.3d at 1022.

## IV.

## DISCUSSION

### A.      County Defendants' Motion to Dismiss

The County Defendants move to dismiss portions of Plaintiffs' complaint on the ground that the claims against Defendants County of Kings, Robinson, and the Kings County Sheriff in his official capacity are redundant and the redundant defendants should be dismissed; there are insufficient allegations to support any claims against Defendant Robinson in his individual capacity; the second and fourth causes of action are redundant and one of them should be dismissed; and Plaintiffs fail to allege sufficient facts to state a claim under the ADA.

Plaintiff counters that the County Defendants have failed to meet the legal requirements for a motion to dismiss under Rule 12(b)(6); Plaintiffs can choose to sue more than one of the

culpable entities citing to <u>Berry v. Robinson</u>, No. CV01–02069DDF(SHX), 2002 WL 356764 (C.D. Cal.) and there is no statutory requirement to make the Plaintiff choose between the sheriff, the county and the sheriff's department in bringing this action; the complaint is sufficient to allege supervisory liability against Defendant Robinson; and the ADA claim is sufficiently pled but Plaintiffs are willing to amend the cause of action. Plaintiffs state they are willing to merge the second and fourth causes of action in the complaint.

The County Defendants rely on <u>Kentucky v. Graham</u>, 473 U.S. 159, 165 (1985), to argue that when both an officer and the local entity are named in a lawsuit and the officer is named in his official capacity, the claim against the officer is redundant and may be dismissed. Defendants reply that, applying this principle, courts in this district have dismissed defendants that are sued in their official capacity when the entity employing the individual is also a defendant. Defendants argue that Plaintiffs misunderstand the holding of <u>Berry</u> which addressed a request by the county to be substituted in place of a named defendant. Defendants argue they are not attempting to override the Plaintiffs' choice to sue but are addressing the fact that certain defendants are redundant as the Plaintiffs have sued the sheriff and the entities by which he is employed. Further, Defendants argue that the Kings County Sheriff's Office is a department of Kings County and as such it should be dismissed as redundant.

Defendants also argue that the allegations in the complaint as to Defendant Robinson are conclusory allegations that do not demonstrate any personal involvement and are insufficient to state a claim against Defendant Robinson in his individual capacity.

      1.  <u>Whether Claims Against Kings County Sheriff's Office and Sheriff Robinson in his Official Capacity are Redundant and Should be Dismissed</u>

The County Defendants contends that the complaint names the County of Kings, Sheriff Robinson, and the Kings County Sheriff's Office as Defendants and that allowing the claims to proceed against the County of Kings and the Kings County Sheriff's Office would result in impermissible double recovery against a single funding source. Further, the County Defendants argue that when a plaintiff files a claim against both a local government entity and an officer in his official capacity, the officer should be dismissed as a redundant defendant. Defendants seek

1  to have the Kings County Sheriff's Office and Sheriff Robinson in his official capacity dismissed

2  from this action.

3        Plaintiffs counter that they may sue the sheriff in his official capacity concurrently with

4  the entity defendants.  Plaintiffs argue that County Defendants' argument that they cannot sue

5  the county, the sheriff's department, and the sheriff in his official capacity was rejected in <u>Berry</u>.

6  Plaintiffs further argue that there is no statutory authority requiring them to choose between

7  suing the sheriff, the jail, or the county.

8        Defendants reply that <u>Berry</u> does not support the argument that Plaintiffs make in this

9  action.  Defendants rely on <u>Graham</u> to argue that Plaintiff cannot bring this action against an

10  employee in his official capacity, the county for which he works, and a county department.

11        **a.**        **Defendant Robinson**

12        The Court first considers whether the official capacity claims against Defendant

13  Robinson are redundant and should be dismissed in this action.  A suit brought against

14  government officials in their official capacity is generally equivalent to a suit against the

15  government itself.  <u>McRorie v. Shimoda</u>, 795 F.2d 780, 783 (9th Cir. 1986).  In an official-

16  capacity action, the governmental entity may be held "liable under § 1983 only when the entity

17  itself is a 'moving force' behind the deprivation, thus, in an official-capacity suit the entity's

18  'policy or custom' must have played a part in the violation of federal law."  <u>Graham</u>, 473 U.S. at

19  166 (internal citations omitted); <u>accord</u> <u>Hafer v. Melo</u>, 502 U.S. 21, 25 (1991); <u>McRorie</u>, 795

20  F.2d at 783.  "[T]he phrase 'acting in their official capacities' is best understood as a reference to

21  the capacity in which the state officer is sued, not the capacity in which the officer inflicts the

22  alleged injury."  <u>Hafer</u>, 502 U.S. at 26.

23        The Court agrees that Plaintiffs' reliance on <u>Berry</u> is misplaced here.  In <u>Berry</u>, the

24  plaintiff had been over detained and brought an action against the county sheriff and members of

25  the board of supervisors.  2002 WL 356764, at *1.  The sheriff moved to dismiss the complaint

26  and also sought to substitute the county for the sheriff who had been named as defendant in the

27  complaint.  <u>Id.</u> at *2.  The court found that the plaintiff is master of his complaint and declined to

28  substitute the county for the sheriff named in the complaint.  <u>Id.</u> *2.  However, the issue raised

by the instant motion is not the substitution of the party named in the complaint.  There is no motion to substitute a defendant, rather Defendants contend that Plaintiffs have brought suit against multiple defendants which are redundant and should be dismissed.  The holding in Berry does not address the issue before the Court here.

Plaintiffs' official capacity claim is brought against Defendant Robinson in his capacity as the Sheriff of Kings County and is based upon an alleged custom or policy of Kings County.  Each of the causes of action is brought against Defendant Robinson, Kings County, and the Kings County Sheriff's Office.  "There is no longer a need to bring official-capacity actions against local government officials, for under Monell, local government units can be sued directly for damages and injunctive or declaratory relief."  Graham, 473 U.S. at 167 n.14.  The claim against Defendant Robinson in his official capacity is a suit against the county itself.  McRorie, 795 F.2d at 783; see Graham, 473 U.S. at 165 (Official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent.")  Unlike an individual capacity claim, the plaintiff seeking to recover damages in an official-capacity suit must look to the government entity itself.  Graham, 473 U.S. at 166.  "[A] judgment against a public servant 'in his official capacity' imposes liability on the entity that he represents...."  Id. at 169 (quoting Brandon v. Holt, 469 U.S. 464, 471 (1985)).

The Ninth Circuit has held that "[w]hen both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant."  Ctr. for Bio-Ethical Reform, Inc. v. Los Angeles Cty. Sheriff Dep't, 533 F.3d 780, 799 (9th Cir. 2008).  Accordingly, the Court finds that the claims against Defendant Robinson in his official capacity are redundant as the claims have also been brought against the County of Kings and recommends that the motion to dismiss the official capacity claims against Defendant Robinson be granted.  See McClelland v. City of Modesto, No. CV F 09-1031 AWI-DLB, 2009 WL 2941480, at *3 (E.D. Cal. Sept. 10, 2009), order corrected, No. CV F 09-1031 AWI-DLB, 2009 WL 2982850 (E.D. Cal. Sept. 14, 2009) ("Because entities employing each of the named individual Defendants were provided notice and an opportunity to respond, the official-capacity claims against the individual agents of those entities are duplicative

1  of the Plaintiff's claims against the entities themselves."); <u>Gomes v. Cty. of Kauai</u>, __ F.Supp.3d

2  ___, 2020 WL 5097835, at *4 (D. Haw. Aug. 26, 2020) (dismissing official capacity claims as

3  duplicative of claims against entity); <u>Vance v. Cty. of Santa Clara</u>, 928 F.Supp.993, 996 (N.D.

4  Cal. 1996) (official capacity claims should be dismissed as duplicative of claims against the

5  entity); <u>Schiff v. City & Cty. of San Francisco</u>, No. 19-CV-03260-YGR, 2020 WL 95637, at *2

6  (N.D. Cal. Jan. 8, 2020); (same); <u>Lallemand v. Cty. of Los Angeles</u>, No.

7  LACV1700781JAKSSX, 2018 WL 6136816, at *5 (C.D. Cal. June 12, 2018) (although claims

8  were brought against defendants in individual and official capacities it does not change the

9  analysis that the official capacity claims are duplicative of the claims against the entity); <u>Rivas v.</u>

10 <u>California Franchise Tax Bd.</u>, 619 F.Supp.2d 994, 1004 (E.D. Cal. 2008) (It is well established in

11 the Ninth Circuit that an official capacity claim is redundant when brought alongside a claim

12 against the entity.).

13      The Court recommends that the official capacity claims against Defendant Robinson be

14 dismissed from this action without leave to amend.

15          **b.      Kings County Sheriff's Office**

16      County Defendants seek to dismiss the Kings County Sheriff's Office on two grounds: 1)

17 they are not a person within section 1983; and 2) that the Sheriff's Office and County are

18 redundant defendants.

19          i.      <u>Whether the Sheriff's Office is a person within section 1983</u>

20      Initially, Defendant argues that municipal departments are not considered persons under

21 section 1983, and seeks dismissal of the Kings County Sheriff's Office.  Many courts that have

22 considered this issue have found that "[c]laims against a municipality and its respective police

23 department are treated as claims against the municipality and thus not subject to suit under §

24 1983." <u>Gomes</u>, 2020 WL 5097835, at *5.  The term "persons" in section 1983 "encompasses

25 state and local officials sued in their individual capacities, private individuals and entities which

26 acted under color of state law, and local governmental entities."  <u>Vance</u>, 928 F.Supp. at 995-96

27 (citing Martin Schwartz and John Kirklin, Section 1983 Litigation: <u>Claims Defenses and Fees</u>, §

28 5.2 (2d ed. 1991).  A municipal department is not a person under section 1983; and [n]aming a

1    municipal department as a defendant is not an appropriate means of pleading a § 1983 action

2    against a municipality."  Vance, 928 F.Supp. at 996; see also Vargas v. Cty. of San Bernardino,

3    No. EDCV18946MWFKKX, 2018 WL 6177243, at *3 (C.D. Cal. July 30, 2018) ("Since the

4    Sheriff's Department is nothing more than a subdivision of the County, Plaintiff must assert his §

5    1983 claims against the County alone, and not against the Sheriff Department."); Nelson v. Cty.

6    of Sacramento, 926 F.Supp.2d 1159, 1170 (E.D. Cal. 2013) (sheriff's department is not a proper

7    defendant in a section 1983 action); Jewett v. City of Sacramento Fire Dep't, No. CIV.2:10-556

8    WBS KJN, 2010 WL 3212774, at *2 (E.D. Cal. Aug. 12, 2010) (same); Menchaca v. San Diego

9    Sheriff's Dep't, No. 3:17-CV-02059-JAH-JMA, 2018 WL 840252, at *3 (S.D. Cal. Feb. 13,

10   2018) (collecting cases); Cartee v. Imperial Cty. Sheriff's Dep't, No. 318CV00327CABAGS,

11   2018 WL 2411742, at *3 (S.D. Cal. May 29, 2018) (same).

12          However, district judges have disagreed with these holdings, and have denied motions

13   seeking to dismiss a county sheriff's office or city police department based on the argument that

14   the department was not a person within the meaning of section 1983.  See Estate of Osuna v.

15   Cty. of Stanislaus, 392 F.Supp.3d 1162, 1171 n.2 (E.D. Cal. 2019); Estate of Pimentel v. City of

16   Ceres, No. 1:18-CV-01203-DAD-EPG, 2019 WL 2598697, at *3 n.2 (E.D. Cal. June 25, 2019);

17   Estate of Alejandro Sanchez v. Cty. of Stanislaus, No. 1:18-CV-00977-DAD-BAM, 2019 WL

18   1745868, at *3 n.1 (E.D. Cal. Apr. 18, 2019).  Specifically, in Estate of Alejandro Sanchez, 2019

19   WL 1745868, at *3, the district judge held that the decisions in Streit v. Cty. of Los Angeles, 236

20   F.3d 552 (9th Cir. 2001), and Brewster v. Shasta County, 275 F.3d 803, 807 (9th Cir. 2001), are

21   binding on this court and control the resolution of whether a municipal department is a person

22   under section 1983.   The parties were ordered to provide supplemental briefing on this

23   disagreement.

24          County Defendants have not addressed the issue of whether a county sheriff's department

25   is a person within the meaning of section 1983 in their supplemental briefing.  Since Defendants

26   have failed to adequately brief the split within this circuit on whether a sheriff's office or police

27   department is a person within section 1983, and given the recent holdings in numerous prior

28   cases that a sheriff's office or police department is a person within section 1983, the Court

1    recommends denying the motion on this ground.

2           ii.      Whether the Sheriff's Office should be dismissed as duplicative of the County of
3                    Kings

4           Next, the Court considers the County Defendants argument that the claims against the

5    County of Kings and the Kings County Sheriff's Office are redundant and Kings County

6    Sheriff's Office should be dismissed from this action.   County Defendants' supplemental

7    briefing concede that there is a split in authority within this circuit as to whether naming the

8    sheriff's office is duplicative when the municipal entity is also named a defendant.

9           In Estate of Osuna, 392 F.Supp.3d 1162, Judge Drozd denied a request to dismiss the

10   county sheriff's office as a defendant as duplicative of the claims against the county who was

11   also named as a defendant.   The issue considered was whether the Sheriff's Department was an

12   entity that could be sued under Rule 17(b)(3) of the Federal Rules of Civil Procedure.   The court

13   found that the Sheriff's Department was a separately suable public entity under California law.

14   Estate of Osuna, 392 F.Supp.3d at 1171.   In so holding, the court considered Streit which

15   addressed whether the county sheriff was an arm of the state or an arm of the county in which he

16   serves.   In doing do, Streit applied the analytical framework set forth in McMillian v. Monroe

17   County, 520 U.S. 781 (1997).   Streit, 263 F.3d at 559.   McMillian set forth two principles that

18   were considered in determining whether the defendant was an arm of the state or the county.   Id.

19   at 561.   First, "it cautioned against employing a 'categorical, all or nothing' approach" and

20   requires the court to consider "whether governmental officials are final policymakers for the

21   local government in a particular area or on a particular issue."   Streit, 263 F.3d at 559 (quoting

22   McMillian, 50 U.S. at 785).   Second, while "the question of municipal liability under section

23   1983 is one of federal law, 'our inquiry is dependent on an analysis of state law.' "   Streit, 263

24   F.3d at 560 (quoting McMillian, 50 U.S. at 786).

25          The Streit court first considered the county liability on the function in question, which

26   was to effectuate the release of prisoners where it is clear that there is no legal cause for

27   continued detention, and found the Sheriff's Department acted pursuant to county and not state

28   authority.   Streit, 263 F.3d at 561.   The California Constitution does not list sheriffs as part of the

states' executive department which would be especially important in determining liability.  Id.
Therefore, the Sheriff's Department is a county, not a state agency.  Id.  The California
Government Code also established that the Sheriff's Department operated for the county and not
the state in administering local prison policy.  Id.  The California Government Code grants "the
county boards of supervisors broad fiscal and administrative powers for the management of the
individual county jails so long as the boards do not 'obstruct the investigative function of the
sheriff of the county' " and "counties retain the power to transfer control of a county jail from the
sheriff to a county-created department of corrections, suggesting that the counties actually
control and operate the jails, and not the state via the sheriffs."  Id. (citing Cal. Gov. Code §
23013, 25303 and Beck v. County of Santa Clara, 204 Cal.App.3d 789, 793 (1988)).  Even if the
function was viewed more broadly as the oversight and management of county jails, the
appellate court found that the sheriff acts for the county in this management function.  Streit, 263
F.3d at 562.

Further, under the California Government Code, the county and not the state would pay
damages for a section 1983 claim.  Streit, 263 F.3d at 562 (citing Cal. Gov. Code § 815.2).
Sheriffs are elected officers and "are required to have their offices at the county seat with the
other county officers, Cal. Gov.Code § 24250; their vacancies are filled as 'provided by law for
filling elective county offices;' Cal. Gov.Code § 24205; and their services are contracted out by
the counties—not the state."  Streit, 236 F.3d at 562.  Therefore, the county is liable for the
actions of the sheriff's department.  Id.  The California Supreme Court had previously held that
the county was liable for the sheriff's failure to release a prisoner at the completion of his
sentence.  Id. (citing Sullivan v. County of Los Angeles, 12 Cal.3d 710 (1974).  The appellate
court found that the sheriff's department "when functioning as the administrator of the local jail,
is a County actor, and that the County may therefore be subject to liability under 42 U.S.C. §
1983.  Streit, 236 F.3d at 565.

The appellate court then went on to discuss whether the sheriff's department was a
separately suable entity under Rule 17(b) of the Federal Rules of Civil Procedure.  Streit, 236
F.3d at 565.  Relying on California court decisions which "held that a police department is a

public entity under section 200 of the California Evidence Code," "a Police Department may be sued in Federal Court."  Id.  A police department is a separately suable entity.  Id. at 566; see also Estate of Pimentel, 2019 WL 2598697, at *3 (finding the binding decisions control resolution and denying request to dismiss claim against police department as duplicative); Estate of Alejandro Sanchez, 2019 WL 1745868, at *3 (same); Tennyson v. Cty. of Sacramento, No. 2:19-CV-00429-KJM-EFB, 2020 WL 4059568, at *6 (E.D. Cal. July 20, 2020) (recognizing divergent views of the courts and following Streit).

In their supplemental briefing, Defendants concede that the County of Kings and Kings County Sheriff's Office can be sued in their own right and that there is a split in authority as to whether naming the sheriff's office is duplicative where the county has also been named as a defendant.  Defendants argue that there is no practical reason to name both entities because a Monell claim against the County of Kings is the same as a Monell claim against the Kings County Sheriff's Office.  Defendants contend that allowing this action to proceed against both entities would likely confuse a jury because, while the jury instructions would be the same, the verdict form would require a series of questions for each entity.

Second, Defendants argue that the County of Kings and Kings County Sheriff's Office are essentially one and the same for the purposes of Plaintiffs' legal theories and if the Sheriff's Office policies and practices are deemed unconstitutional then the County of Kings is financially responsible for any judgment entered.

Third, Defendants contend that allowing both entities to remain in the action will result in additional discovery which will likely be identical.  Defendants argue there is no need for duplication of discovery if only one of the entities remains a defendant.  Since the same claims are alleged against both entities, Defendants assert there is no practical reason for both entities to remain as separate defendants.

Plaintiff's counter that Defendants have failed to provide any authority contrary to Streit, and the Court should follow Judge Drozd's prior rulings which rely on Streit.  Plaintiffs further argue that there is a distinction between the County of Kings and the Kings County Sherriff's Office.  Plaintiffs argue that the sheriff is the final policy maker for the county when managing

1   the county jail as well as in performing some law enforcement functions.  Plaintiffs argue that

2   while the entity responsible to pay any judgment would be the county, there are distinct

3   differences between the sheriff and the county that warrant keeping both entities in the case at

4   this stage of the proceedings.  Plaintiffs argue that Defendants are incorrect in arguing that

5   keeping both entities in the action will result in additional discovery and that it will actually

6   result in more efficient discovery.  Plaintiffs contend that discovery requests can be served on the

7   specific entity that will be responsible, such as budget issues directed to the County of Kings and

8   procedures related to medical care directed to the Sheriff's Office.  Plaintiffs argue that while

9   general interrogatory or document requests will most likely be sent to both parties, the burden of

10  copying and pasting the same response or producing the same documents is minimal and not a

11  sufficient reason to dismiss a party from the lawsuit.

12          The Court finds that Defendants have failed to demonstrate that keeping the County of

13  Kings and the Kings County Sheriff's Office as defendants in this matter will result in an undue

14  burden on discovery in this matter, and Plaintiffs have provided valid reasons that discovery can

15  be obtained from the separate entities.  Finally, while Defendants argue that keeping both entities

16  as defendants in this matter may cause confusion on the verdict form, this is an issue that can be

17  addressed should the case proceed to trial.  Given the conflicting authority on the issue of

18  whether the entity defendants are duplicative, and Judge Drozd's prior orders rejecting this

19  argument in similar cases, the Court recommends that County Defendants' motion to dismiss the

20  Kings County Sheriff's Office as a duplicative defendant be denied at this time.

21          2.      Whether Plaintiff's Have Stated a Claim Against Defendant Robinson in his
                    Individual Capacity
22

23          Defendants also contend that Plaintiffs have failed to allege sufficient facts to link

24  Defendant Robinson to any of the causes of action and do not allege any personal involvement

25  by Defendant Robinson.  Defendants argue that Defendant Robinson should be dismissed from

26  this action.

27          Plaintiffs counter that is without dispute that the sheriff is responsible for operating the

28  county jail and is required by statute to take charge of and keep the county jail and the prisoner

18

in it.  Plaintiffs contend that the complaint sufficiently alleges a claim for supervisory liability. Plaintiffs argue that the complaint alleges that Defendant Robinson had knowledge of the problem and implemented a policy that was so deficient that it is a repudiation of constitutional rights and was a moving force behind the constitutional violation which is sufficient to state a claim for supervisory liability.  Plaintiff argues that they are required to name the policymakers or they will not be able to recover for their damages and that the discovery requirements require them to name every responsible party.

Defendants reply that the portions of the complaint that Plaintiffs rely on only assert conclusory allegations without any facts to demonstrate that Defendant Robinson had any personal involvement.  The complaint merely describes the capacities in which Defendant Robinson is sued and then recites conclusions as to <u>Monell</u> theories of liability regarding long standing policies and the failure to adequately supervise, investigation, and discipline employee conduct.  Defendants contend that Plaintiffs have not alleged sufficient facts to plausibly state a claim against Defendant Robinson in his individual capacity.

The Court applies the following standards in determining if Defendants' motion to dismiss should be granted.  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief. . . ."  Fed. R. Civ. P. 8(a)(2).  This requires "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).  "[A] complaint [that] pleads facts that are 'merely consistent with' a defendant's liability . . . 'stops short of the line between possibility and plausibility of entitlement to relief.' " <u>Iqbal</u>, 556 U.S. at 678 (quoting <u>Twombly</u>, 550 U.S. at 557).  Further, although a court must accept as true all factual allegations contained in a complaint, a court need not accept a plaintiff's legal conclusions as true.  <u>Iqbal</u>, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Id.</u> (quoting <u>Twombly</u>, 550 U.S. at 555).

Section 1983 provides a cause of action for the violation of a plaintiff's constitutional or other federal rights by persons acting under color of state law.  <u>Nurre v. Whitehead</u>, 580 F.3d 1087, 1092 (9th Cir 2009); <u>Long v. County of Los Angeles</u>, 442 F.3d 1178, 1185 (9th Cir. 2006);

1  Jones v. Williams, 297 F.3d 930, 934 (9th Cir. 2002).  To state a claim under section 1983, a

2  plaintiff must demonstrate that each defendant personally participated in the deprivation of his

3  rights.  Iqbal, 556 U.S. at 677; Simmons, 609 F.3d at 1020-21; Ewing v. City of Stockton, 588

4  F.3d 1218, 1235 (9th Cir. 2009); Jones, 297 F.3d at 934.  Plaintiffs must plead that the official

5  has violated the Constitution through his own individual actions.  Iqbal, 556 U.S. at 676; OSU

6  Student Alliance v. Ray, 699 F.3d 1053, 1069 (9th Cir. 2012).

7        **a.    Deliberate Indifference to Serious Medical Needs**

8            i.    Objective component of deliberate indifference claim

9        Plaintiffs contend that Defendant Robinson was deliberately indifferent to Decedent's

10  risk of serious harm due to his seizure disorder.  To bring a valid § 1983 claim against a prison

11  official for a violation of the Eighth Amendment, Plaintiffs must first "objectively show that

12  [Decedent] was deprived of something 'sufficiently serious.' "  Lemire v. California Dep't of

13  Corr. & Rehab., 726 F.3d 1062, 1074 (9th Cir. 2013) (quoting Foster, 554 F.3d at 812) and

14  Farmer, 511 U.S. at 834).  Where the claim is based upon the failure to provide medical

15  treatment, the plaintiff must show that he had an objectively serious medical need.  Lemire, 726

16  F.3d at 1082.

17        Plaintiffs allege that Decedent had a seizure disorder that required him to take anti-

18  seizure medication.  Defendants do not contend that Plaintiff has not alleged a sufficiently

19  serious medical need.  The Court finds that Plaintiffs have sufficiently alleged that Decedent had

20  an objectively serious medical need.

21            ii.    Subjective component of a deliberate indifference claim

22        Plaintiffs must also show that that the defendant was "(a) subjectively aware of the

23  serious medical need and (b) failed to adequately respond."  Lemire, 726 F.3d at 1082 (quoting

24  Conn v. City of Reno, 591 F.3d 1081, 1096 (9th Cir. 2010), cert. granted, judgment vacated sub

25  nom. City of Reno, Nev. v. Conn, 563 U.S. 915 (2011), and opinion reinstated, 658 F.3d 897

26  (9th Cir. 2011)).  Plaintiffs complaint is devoid of any factual allegations to demonstrate that

27  Defendant Robinson was aware that Decedent had a serious medical need.  Nor does the

28  complaint contain any facts that show a failure by Defendant Robinson to adequately respond to

1    Decedent's need for medical care.  Rather, the complaint alleges that Defendant Robinson was

2    the Sheriff of the Kings County Sheriff's Department.  (Compl., ¶ 11.)  Plaintiffs allege that

3    "Defendants knew or should have known" that Decedent was at a risk of serious harm due to the

4    obvious risk of seizure through his documented medical history of serious seizures and need for

5    medication; his repeated requests for seizure medication; and his parents informing Defendants

6    of Decedent's history of seizure disorder and need for medication.  (Id., ¶ 34.)  However, the

7    complaint is devoid of any factual allegations that would support an inference that Defendant

8    Robinson was aware that Decedent had a serious medical need.  While there are allegations that

9    Decedent informed staff of his need for medication and that his parents called to report that he

10   needed medication, no facts are alleged that would allow the Court to infer that Defendant

11   Robinson had knowledge of Decedent's medical records, his requests for medication, or his

12   parents calls requesting that he receive medication.  Plaintiffs have failed to state a deliberate

13   indifference claim against Defendant Robinson in his individual capacity.  However, the Court

14   cannot conclude that Plaintiff would be unable to allege any facts that could state a claim, so

15   Plaintiff should be granted leave to amend the deliberate indifference claim.

16           3.      Remaining Causes of Action

17           Plaintiffs do not argue that any of the causes of action allege personal involvement of

18   Defendant Robinson, but contend that he is liable because he is a supervisor.  The Court finds

19   that the factual allegations in the complaint are insufficient to state a claim against Defendant

20   Robinson in his individual capacity for any of the remaining causes of action.

21           Plaintiffs' second cause of action alleges an unconstitutional custom or policy, but there

22   are no factual allegations that Defendant Robinson implemented a policy, rather Plaintiffs seek to

23   hold him liable for the lack of proper policies within the county jail.  "A plaintiff may []establish

24   municipal liability by demonstrating that (1) the constitutional tort was the result of a

25   'longstanding practice or custom which constitutes the standard operating procedure of the local

26   government entity;' (2) the tortfeasor was an official whose acts fairly represent official policy

27   such that the challenged action constituted official policy; or (3) an official with final policy-

28   making authority 'delegated that authority to, or ratified the decision of, a subordinate.' "  Price

1  v. Sery, 513 F.3d 962, 966 (9th Cir. 2008) (quoting Ulrich v. City & County of San Francisco,

2  308 F.3d 968, 984–85 (9th Cir. 2002)).

3      A plaintiff seeking to impose liability upon a municipality is required to identify the

4  policy or custom that caused the constitutional injury.  Bd. of Cty. Comm'rs of Bryan Cty., Okl.,

5  520 U.S. at 403.  A municipality may only be held liable for those deprivations that result "from

6  the decisions of its duly constituted legislative body or of those officials whose acts may fairly be

7  said to be those of the municipality."  Id. at 403–04.  "Similarly, an act performed pursuant to a

8  'custom' that has not been formally approved by an appropriate decisionmaker may fairly

9  subject a municipality to liability on the theory that the relevant practice is so widespread as to

10  have the force of law."  Id. at 404.

11      While Plaintiffs bring the Monell claim against Defendant Robinson, the complaint is

12  devoid of any allegations the he implemented any of the allegedly deficient policies nor are there

13  any facts alleged by which the Court could reasonably infer that the alleged policies were so

14  wide spread that Defendant Robinson was aware of the customs and ratified them.  To state a

15  claim, the complaint must contain sufficient factual content for the court to draw the reasonable

16  conclusion that the defendant is liable for the misconduct alleged.  Iqbal, 556 U.S. at 678.

17  Plaintiffs' complaint fails to link Defendant Robinson to the allegedly deficient policies or

18  customs.

19      Plaintiffs' remaining cause of actions are based on the failure to provide medication for

20  and treat Decedent's medical needs.  For the reasons stated infra, Plaintiffs' have failed to allege

21  any facts by which the Court could reasonably infer that Defendant Robinson was aware

22  Decedent had a serious medical need and was not receiving medication or treatment for his

23  serious medical condition.  Plaintiffs should be granted leave to amend as it is not clear that there

24  are no facts that Plaintiffs could allege to cure the deficiencies in the claims

25      Plaintiffs appear to concede this issue and argue that Defendant Robinson is liable based

26  on supervisory liability.

27      4.    Supervisory Liability

28      Plaintiffs argue that Defendant Robinson is liable as a supervisor because he is the sheriff

and is responsible for operating the county jail and is required by statute to take charge of and keep the county jail and the prisoner in it.   Plaintiffs contend that Defendant Robinson implemented a policy that was so deficient that it is a repudiation of constitutional rights and was a moving force behind the constitutional violation.

Under section 1983, a prison official in a supervisory position may be held liable "if he or she was personally involved in the constitutional deprivation or a sufficient causal connection exists between the supervisor's unlawful conduct and the constitutional violation."  Lemire, 726 F.3d at 1074 (quoting Lolli v. Cnty. of Orange, 351 F.3d 410, 418 (9th Cir. 2003) and Jackson v. City of Bremerton, 268 F.3d 646, 653 (9th Cir. 2001)); Keates v. Koile, 883 F.3d 1228, 1242–43 (9th Cir. 2018).   "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others."  Keates, 883 F.3d at 1243 (quoting Starr, 652 F.3d at 1208). "Therefore, the claim that a supervisory official knew of unconstitutional conditions and 'culpable actions of his subordinates' but failed to act amounts to 'acquiescence in the unconstitutional conduct of his subordinates' and is "sufficient to state a claim of supervisory liability.  Id.

In Iqbal, the Supreme Court addressed what is required under the Federal Rules to state a claim for supervisory liability.  556 U.S. at 676.  First, the Court held that the factors necessary to establish a violation will vary with the constitutional provision at issue.  Id.  In Iqbal, the allegations alleged discrimination in violation of the First and Fifth Amendments and the plaintiff was required to plead and prove that the defendants acted with a discriminatory intent. Id.  Therefore, to state a claim, the plaintiff had to "plead sufficient factual matter to show that petitioners adopted and implemented the detention policies at issue not for a neutral, investigative reason but for the purpose of discriminating on account of race, religion, or national origin."  Id. at 677.  The Court addressed the pleading standard under Rule 8.

The Court first began by considered the allegations in the complaint that were not entitled

to a presumption of truth, such as "petitioners 'knew of, condoned, and willfully and maliciously agreed to subject [him]' to harsh conditions of confinement 'as a matter of policy, solely on account of [his] religion, race, and/or national origin and for no legitimate penological interest[,]' and "that Ashcroft was the 'principal architect' of this invidious policy and that Mueller was 'instrumental' in adopting and executing it[.]"   Iqbal, 556 U.S. at 680–81 (internal citations omitted).   These bare allegations amounted to "to nothing more than a 'formulaic recitation of the elements' of a constitutional discrimination claim," were conclusory and not entitled to a presumption of truth.  Id. at 681.

The Court next considered the allegations to determine if they plausibly suggested a claim for relief.   The complaint alleged that "the [FBI], under the direction of Defendant MUELLER, arrested and detained thousands of Arab Muslim men ... as part of its investigation of the events of September 11" and claimed "[t]he policy of holding post–September–11th detainees in highly restrictive conditions of confinement until they were 'cleared' by the FBI was approved by Defendants ASHCROFT and MUELLER in discussions in the weeks after September 11, 2001."   Iqbal, 556 U.S. at 681.   Taking this allegations as true, they were "consistent with petitioners' purposefully designating detainees 'of high interest'  because of their race, religion, or national origin.  But given more likely explanations, they do not plausibly establish this purpose."   Id.   The Court found that even if there was a plausible inference that the respondents were arrested because of unconstitutional discrimination it would not entitle him to relief.  Id.

> Respondent's constitutional claims against petitioners rest solely on their ostensible "policy of holding post–September–11th detainees" in the ADMAX SHU once they were categorized as "of high interest."   To prevail on that theory, the complaint must contain facts plausibly showing that petitioners purposefully adopted a policy of classifying post–September–11 detainees as "of high interest" because of their race, religion, or national origin.
>
> This the complaint fails to do.  Though respondent alleges that various other defendants, who are not before us, may have labeled him a person "of high interest" for impermissible reasons, his only factual allegation against petitioners accuses them of adopting a policy approving "restrictive conditions of confinement" for post–September–11 detainees until they were " 'cleared' by the FBI."   Accepting the truth of that allegation, the complaint does not show, or even intimate, that petitioners purposefully housed detainees in the ADMAX SHU due to their race, religion, or national origin.  All it plausibly suggests is that the

24

Nation's top law enforcement officers, in the aftermath of a devastating terrorist attack, sought to keep suspected terrorists in the most secure conditions available until the suspects could be cleared of terrorist activity.   Respondent does not argue, nor can he, that such a motive would violate petitioners' constitutional obligations.  He would need to allege more by way of factual content to "nudg[e]" his claim of purposeful discrimination "across the line from conceivable to plausible."

Iqbal, 556 U.S. at 682–83 (internal citations omitted).

The Ninth Circuit addressed supervisory liability based upon allegations that the county sheriff was deliberately indifferent in Starr.  "A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's Eighth Amendment rights is sufficient to demonstrate the involvement—and the liability—of that supervisor.  Thus, when a supervisor is found liable based on deliberate indifference, the supervisor is being held liable for his or her own culpable action or inaction, not held vicariously liable for the culpable action or inaction of his or her subordinates."  Starr, 652 F.3d at 1206–07.

In Starr, the Ninth Circuit held that "a plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his or her subordinates."  652 F.3d at 1207.  The Ninth Circuit held that Starr had stated a claim for supervisory liability because he had specifically alleged "numerous incidents in which inmates in Los Angeles County jails have been killed or injured because of the culpable actions of the subordinates of Sheriff Baca[;]" "that Sheriff Baca was given notice of all of these incident[;] and specifically alleged "that Sheriff Baca was given notice, in several reports, of systematic problems in the county jails under his supervision that have resulted in these deaths and injuries."  Id. at 1216.  The complaint alleged "that Sheriff Baca did not take action to protect inmates under his care despite the dangers, created by the actions of his subordinates, of which he had been made aware."  Id.  The Ninth Circuit found that these incidents were "sufficiently detailed to give notice to Sheriff Baca of the nature of Starr's claim against him and to give him a fair opportunity to defend against it."  Id.

Here, Plaintiffs have not alleged that there is a written policy that was the cause of Decedent's death, but that there was a failure to implement an appropriate medical screening program, failure to provide assessments of at risk arrestees, failure to provide adequate staffing

1    and training, failure to implement a policy to ensure that staff perform timely and appropriate

2    health checks to screen for serious medical conditions, failure to create and or implement

3    guidelines to ensure quality care for inmates with known medical conditions, failure to establish

4    policies ensuring the proper classification of inmates with serious medical conditions, failure to

5    adequately train and supervise employees, maintaining grossly inadequate procedures for

6    reporting, supervising, investigating, reviewing, disciplining and controlling misconduct by

7    employees and agents, and a failure to promulgate appropriate policies, procedures, or measures

8    to prevent the violations alleged.  (Compl., ¶¶ 45; 59.)  Plaintiffs allege that despite having

9    knowledge of the deficient policies, customs and practices, Defendants condoned, tolerated and

10   through actions and inactions ratified such policies.  (Id., ¶ 47.)

11       Although Plaintiffs make conclusory allegations that "Defendants" were aware or should

12   have been aware of the deficient policies, customs or practices, the complaint is devoid of any

13   factual allegations that would demonstrate that Defendant Robinson had any such knowledge.

14   Rather, Plaintiffs merely rely on his responsibility as Sheriff to operate the jail and ensure the

15   safety of the prisons but this claim is based on *respondeat superior* which is not cognizable

16   under section 1983.  Iqbal, 556 U.S. at 677.  A supervisor is only liable for constitutional

17   violations of his subordinates if the supervisor participated in or directed the violations, or knew

18   of the violations and failed to act to prevent them.  Taylor v. List, 880 F.2d 1040, 1045 (9th Cir.

19   1989).

20       The complaint alleges that Defendant Robinson was the Sheriff of Kings County and was

21   employed by the County of Kings.  (Compl., ¶ 11.)  Plaintiffs complaint alleges that Decedent

22   informed unidentified sheriff's deputies and medical staff that he required medication for his

23   seizures and no medication was provided.  (Compl. ¶ 29.)  Decedent's parents informed

24   unidentified jail personnel of the same on numerous occasions.  (Compl., 31.)  While Plaintiffs

25   allege that Defendant Robinson acquiesced to the conduct of his subordinates, failed to

26   discipline, and failed to train, there are no factual allegations that would suggest that Defendant

27   Robinson was aware of any of the misconduct alleged in the complaint nor does the complaint

28   contain allegations of prior incidents of which Defendant Robinson was notified that would have

1   alerted Defendant Robinson of such failures to address the serious medical needs of inmates.

2   "[R]atification requires, among other things, knowledge of the alleged constitutional violation."

3   Christie v. Iopa, 176 F.3d 1231, 1239 (9th Cir. 1999.)   Plaintiffs' conclusory allegations of

4   ratification of policies and procedures (see Compl., ¶¶ 44-45, 48, 59-60, 76, 78) and bare recitals

5   of the elements of the causes of action are not sufficient to state a supervisory liability claim

6   against Defendant Robinson.[2]  Iqbal, 556 U.S. at 678.

7        The Court finds that the complaint contains no factual allegations by which the Court can

8   reasonably infer that Defendant Robinson implemented any policy or was aware of the alleged

9   customs, practices or policies of inaction that are alleged in the complaint.  Plaintiff has not

10  included factual allegations that would be sufficient to state a plausible claim of supervisory

11  liability against Defendant Robinson.  The Court recommends granting County Defendants'

12  motion to dismiss the supervisory liability claims against Defendant Robinson.   However,

13  Plaintiffs should be granted leave to amend to cure the deficiencies in the pleading.

14        5.      Whether the Separate Causes of Action Alleging Monell Claims are Duplicative

15        Defendants argue that Plaintiffs' second cause of action for an unconstitutional custom or

16  policy and fourth cause of action for an unconstitutional custom, practice or policy both fall

17  under Monell liability and should be merged into a single cause of action.  Plaintiffs respond,

18  that although they maintain their right to plead separate causes of action based on Monell

19  liability, they will merge the two causes of action into a single cause of action.

20        Based on Plaintiffs' lack of opposition to the motion to dismiss the second and fourth

21  causes of action, the Court recommends that the motion be granted with leave to amend.

22        6.      Whether Plaintiff has Sufficiently Plead a Claim for Violation of the Americans
                 with Disabilities Act
23

24        Defendants contend that Plaintiffs have failed to allege a violation under Title II of the

25  ADA.  Defendants argue that the complaint does not contain any allegations that the program

26  [2] Plaintiffs argue that they are required to name the potential official policymakers in their complaint, but for the
    reasons discussed above, Plaintiffs have failed to allege any facts by which the Court can reasonably infer that
27  Defendant Robinson implemented or acquiesced to any of the deficient practices that are alleged in the complaint.
    Plaintiffs further allege that they intend to seek discovery to establish who the official policymaker was.  However,
28  neither of these arguments are relevant to the current motion to dismiss the claims against Defendant Robinson for
    failure to state a cognizable claim.

1  providing the benefit received federal financial assistance, and therefore, Plaintiffs have failed to

2  state a claim under the ADA.  Further, Defendants assert that the complaint lacks any specificity

3  as to what was done to discriminate against Decedent other than the failure to provide him with a

4  reasonable accommodation.

5      Plaintiffs counter that they are willing to amend the cause of action to address the

6  deficiencies identified by Defendants.

7      Based on Plaintiffs' lack of opposition to the motion, the Court recommends that County

8  Defendants' motion to dismiss the ADA claim for failure to state a claim be granted with leave

9  to amend.

10          **B.      Defendant NaphCare's Motion to Dismiss**

11          1.      Whether the Separate Causes of Action Alleging Monell Claims are Duplicative

12      Similar to the County Defendants, Defendant NaphCare argues that Plaintiffs have

13  alleged two Monell claims that state the same allegations.  Defendant NaphCare moves to

14  dismiss or strike either the second or fourth causes of actions as duplicative or redundant.

15  Plaintiffs agree to merge the second and fourth causes of action that were alleged in the

16  complaint.

17      Based on Plaintiff's lack of opposition to Defendant NaphCare's motion to dismiss or

18  strike one of the Monell causes of action as duplicative, the Court recommends granting the

19  motion in this regard.

20          2.      Whether Plaintiffs Have Stated an ADA Claim Against Defendant NaphCare

21      Defendant NaphCare moves to dismiss the fifth cause of action alleging violations of the

22  ADA on the ground that Plaintiffs have not alleged that it is a public entity.  Defendant

23  NaphCare argues that, as a private corporation contracting with Kings County to provide medical

24  care, it is not a public entity and cannot be held liable under the statute.

25      Plaintiffs concede that Defendant NaphCare is not a public entity and states they will

26  withdraw the ADA claim as it related to Defendant NaphCare in any amended complaint.

27      Based on Plaintiffs' concession that Defendant NaphCare is not a public entity that can

28  be held liable under the ADA, the Court recommends that Defendant NaphCare's motion to

1  dismiss the ADA claim be granted without leave to amend.[3]

2                              **V.**

3               **CONCLUSION AND RECOMMENDATIONS**

4      Based on the foregoing, IT IS HEREBY RECOMMENDED that:

5       1.      County Defendants' motion to dismiss, filed on May 22, 2020, be GRANTED IN

6                PART AND DENIED IN PART as follows:

7              a.     County Defendants' motion to dismiss the official capacity claims against

8                    Defendant Robinson be GRANTED and the official capacity claims be

9                    DISMISSED WITHOUT LEAVE TO AMEND;

10             b.     County Defendants' motion to dismiss the claims against the Kings

11                    County Sheriff's Office as redundant of the claims against Defendant

12                    County of Kings be DENIED;

13             c.     County Defendants' motion to dismiss the individual capacity claims

14                    against Defendant Robinson for failure to state a claim be GRANTED

15                    WITH LEAVE TO AMEND;

16             d.     County Defendants motion to merge the <u>Monell</u> claims into a single cause

17                    of action be GRANTED;

18             e.     County Defendant's motion to dismiss the ADA claim for failure to state a

19                    claim be GRANTED WITH LEAVE TO AMEND;

20       2.      Defendant NaphCare's motion to dismiss, filed June 10, 2020, be GRANTED as

21

---

[3] Plaintiff argues that the majority of Defendant's motion to dismiss is moot if the Court accepts the first amended complaint that was attached as an exhibit to the June 1, 2020 opposition. Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend their pleading once as a matter of course at any time before a responsive pleading is served. Fed. R. Civ. P. 15(a)(1). Otherwise, a party may amend only by leave of the court or by written consent of the adverse party, and leave shall be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). Plaintiffs did not obtain a stipulation to file an amended complaint nor did they file a motion to amend.

Rule 15 also provides that an amended complaint may be filed "21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier." Fed. R. Civ. P. 15(a)(1)(B). Here, Defendants filed their motion to dismiss on May 22, 2020, and rather than filing an amended complaint, Plaintiffs filed an opposition to the motion and attached the amended complaint as an exhibit. In these circumstances, Plaintiffs have not "filed" an amended complaint. The Court will recommend that Plaintiffs be granted leave to amend. Once an order issues addressing the findings and recommendations, Plaintiff will be provided by the deadline by which any amended complaint may be filed.

1  follows

2        a.      Defendant NaphCare's motion to dismiss or strike one of the <u>Monell</u>

3               causes of actions as duplicative be GRANTED;

4        b.      Plaintiff's ADA claim against Defendant NaphCare be DISMISSED

5               WITHOUT LEAVE TO AMEND; and

6      3.      Plaintiffs be GRANTED leave to file an amended complaint.

7  This findings and recommendations is submitted to the district judge assigned to this

8  action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304.  Within **fourteen**

9  **(14) days** of service of this recommendation, any party may file written objections to this

10 findings and recommendations with the court and serve a copy on all parties.  Such a document

11 should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The

12 district judge will review the magistrate judge's findings and recommendations pursuant to 28

13 U.S.C. § 636(b)(1)(C).  The parties are advised that failure to file objections within the specified

14 time may result in the waiver of rights on appeal.  <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th

15 Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

16

17 IT IS SO ORDERED.

18 Dated:  __**March 8, 2021**__

19                                UNITED STATES MAGISTRATE JUDGE

20

21

22

23

24

25

26

27

28