# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROGER CANTU, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>KINGS COUNTY, et al.,<br><br>  Defendants. | Case No. 1:20-cv-00538-JLT-SAB<br><br>FINDINGS AND RECOMMENDATIONS RECOMMENDING GRANTING PETITION FOR APPROVAL OF MINOR'S COMPROMISE WITH ORDER REQUIRING DEPOSIT OF FUNDS INTO BLOCKED INTEREST-BEARING ACCOUNT<br><br>ORDER VACATING JANUARY 10, 2024 HEARING<br><br>(ECF Nos. 62, 63, 64, 65, 69, 70, 71, 72, 72)<br><br>**OBJECTIONS DUE: 14 DAYS** |

## I.

## INTRODUCTION

Currently before the Court is Plaintiff G.C.'s motion to approve minor's compromise, encompassing the settlement of this action as between the minor Plaintiff G.C. and Defendants Kings County, Kings County Sheriff Department, and NaphCare, Inc. (ECF No. 62.) The matter is before the assigned Magistrate Judge for the issuance of findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(B), and Local Rule 302. The Court finds this matter suitable for decision without oral argument and the hearing set for January 10, 2024, shall be vacated. See Local Rule 230(g). The Court, having reviewed the petition filings and accompanying

materials attached thereto, the supplemental briefing provided at the request of the Court, and the Court's record, recommends the petition for compromise of the minor's claims be granted with an order requiring the funds be deposited into a federally insured blocked interest-bearing account.

## II.

## BACKGROUND

Plaintiffs instituted this action by filing a complaint on April 14, 2020. Following recommendations on a motion to dismiss, Plaintiffs filed a first amended complaint on May 4, 2021. (FAC, ECF No. 25.) The first amended complaint currently reflects that Plaintiffs Roger Cantu, individually; Linda Brown, individually, G.C., a minor by and through his guardian ad litem Maryzol Jones, individually, and as successor-in-interest to the decedent Gregory Cantu, bring their Complaint against Defendants Kings County, Kings County Sheriff's Department, and Naphcare, Inc. (ECF No. 25.) The first cause of action is for denial of medical care, under 42 U.S.C. §1983, brought only by Plaintiff G.C. against Defendant Naphcare. The second cause of action is for unconstitutional custom or policy, under 42 U.S.C. §1983, brought by all Plaintiffs against all Defendants. The third cause of action is for substantive due process (loss of parent/child relationship), under 42 U.S.C. §1983, by all Plaintiffs against all Defendants. The fourth cause of action is for violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132, by Plaintiff G.C. against Defendants Kings County and Kings County Sheriff's Department. The fifth cause of action is for wrongful death, negligence, against all Defendants.

On August 15, 2023, the parties filed a notice of settlement of this entire action. (ECF No. 51.) On August 16, 2023, the Court set a deadline of thirty (30) days to file the petition for minor's compromise. No petition was filed by the deadline, on September 26, 2023, the Court issued an order to show cause why sanctions should not be imposed for the failure to file the petition. (ECF No. 55.) The Court discharged the order to show cause on September 28, 2023, and extended the deadline to file the petition. (ECF No. 58.)

On October 3, 2023, the Court denied a request to file under seal. (ECF Nos. 59, 60.) On October 11, 2023, the Court issued an order to show cause for failure to file the petition by the

1 deadline. (ECF No. 61.) On October 12, 2023, minor Plaintiff G.C., through their guardian ad
2 litem Maryzol Jones ("Petitioner"), filed a petition to compromise Plaintiff G.C.'s claims in this
3 action. (ECF Nos. 62, 63, 64, 65.) The matter was set for hearing on December 13, 2023. (ECF
4 No. 62.) Petitioner also filed a declaration of counsel, a proposed order, and a notice of motion.
5 (ECF Nos. 63, 64, 65.) On October 17, 2023, the Court issued an order to show cause for failure
6 to response directly to the order to show cause issued on October 11, 2023. (ECF No. 66.) On
7 the same date, a response to the order to show cause was filed, and on October 18, 2023, the
8 Court discharged the orders to show cause. (ECF Nos. 67, 68.)

9 Upon review of the petition materials, the Court determined supplemental briefing was
10 necessary in advance of the hearing. Therefore, on December 1, 2023, the Court ordered
11 Petitioner to file supplemental briefing on or before December 8, 2023, so the Court would have
12 the materials in advance of the hearing. (ECF No. 69.) The deadline to file supplemental
13 briefing expired and Petitioner did not file the supplemental briefing, nor any other filing
14 notifying the Court why no such filing was made. Therefore, on December 11, 2023, the Court
15 issued an order requiring Petitioner to show cause in writing why sanctions should not be
16 imposed. (ECF No. 71.) The Court also continued the hearing on the petition until January 10,
17 2024. (Id.)

18 On December 11, 2023, Petitioner did file supplemental briefing. (ECF No. 70.) In the
19 supplemental briefing, Petitioner acknowledged the late filing in a declaration of counsel
20 attached. (ECF No. 70-1 at 1-2.) The supplemental briefing was docketed before the Court's
21 order to show cause was docketed. Additionally on December 11, 2023, Petitioner filed a direct
22 response to the Court's order to show cause. (ECF No. 72.) On December 12, 2023, the Court
23 discharged the order to show cause issued on December 11, 2023. (ECF No. 73.)

### III.
### LEGAL STANDARD

26 "District courts have a special duty, derived from Federal Rule of Civil Procedure 17(c),
27 to safeguard the interests of litigants who are minors." Robidoux v. Rosengren, 638 F.3d 1177,
28 1181 (9th Cir. 2011). "In the context of proposed settlements in suits involving minor plaintiffs,

this special duty requires a district court to 'conduct its own inquiry to determine whether the settlement serves the best interests of the minor.' " Robidoux, 638 F.3d at 1181 (quoting Dacanay v. Mendoza, 573 F.2d 1075, 1080 (9th Cir. 1978)).

The Local Rules for this district provide that "[n]o claim by or against a minor . . . may be settled or compromised absent an order by the Court approving the settlement or compromise." L.R. 202(b). "In actions in which the minor . . . is represented by an appointed representative pursuant to appropriate state law, excepting only those actions in which the United States courts have exclusive jurisdiction, the settlement or compromise shall first be approved by the state court having jurisdiction over the personal representative." L.R. 202(b)(1). In all other actions, the motion for approval of a proposed settlement shall be filed pursuant to Local Rule 230, and must disclose, among other things, the following:

> the age and sex of the minor or incompetent, the nature of the causes of action to be settled or compromised, the facts and circumstances out of which the causes of action arose, including the time, place and persons involved, the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise, and, if a personal injury claim, the nature and extent of the injury with sufficient particularity to inform the Court whether the injury is temporary or permanent. If reports of physicians or other similar experts have been prepared, such reports shall be provided to the Court. The Court may also require the filing of experts' reports when none have previously been prepared or additional experts' reports if appropriate under the circumstances. Reports protected by an evidentiary privilege may be submitted in a sealed condition to be reviewed only by the Court in camera, with notice of such submission to all parties.

L.R. 202(b)(2).

"When the minor or incompetent is represented by an attorney, it shall be disclosed to the Court by whom and the terms under which the attorney was employed; whether the attorney became involved in the application at the instance of the party against whom the causes of action are asserted, directly or indirectly; whether the attorney stands in any relationship to that party; and whether the attorney has received or expects to receive any compensation, from whom, and the amount." L.R. 202(c). "Upon the hearing of the application, the representative

4

compromising the claim on behalf of the minor or incompetent, and the minor or incompetent shall be in attendance unless, for good cause shown, the Court excuses their personal attendance." L.R. 202(d).

In Robidoux, the Ninth Circuit cautioned that the typical practice of applying state law and local rules governing the award of attorneys' fees "places undue emphasis on the amount of attorney's fees provided for in settlement, instead of focusing on the net recovery of the minor plaintiffs under the proposed agreement." 638 F.3d at 1181. District courts should thus "limit the scope of their review to the question [of] whether the net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." Id. at 1181-82. "Most importantly, the district court should evaluate the fairness of each minor plaintiff's net recovery without regard to the proportion of the total settlement value designated for adult co-plaintiffs or plaintiffs' counsel—whose interests the district court has no special duty to safeguard." Id.; but see A.G.A. v. Cty. of Riverside, No. EDCV1900077VAPSPX, 2019 WL 2871160, at *2 (C.D. Cal. Apr. 26, 2019) ("Some courts have read Robidoux to suggest it is improper to evaluate the reasonableness of attorneys' fees provisions in proposed settlement agreements of minors' claims . . . The Court declines to adopt this approach.").[1]

The holding of Robidoux was expressly "limited to cases involving the settlement of a minor's federal claims," and the Circuit did "not express a view on the proper approach for a

---

[1] In A.G.A., the court noted the action had "a key distinguishing feature from the facts presented in Robidoux [where] the district court had denied in part the parties' motion to approve the proposed settlement, which included as a material term that plaintiffs' counsel would recover approximately 56% of the settlement amount as attorneys' fees . . . The Ninth Circuit found the district court abused its discretion in denying in part the motion based on the amount of attorneys' fees alone because it placed 'undue emphasis on the amount of attorneys' fees provided for in [the] settlement.'" 2019 WL 2871160, at *3 (quoting Robidoux, 638 F.3d at 1181). The A.G.A. court found that in contrast, the attorneys' fees at issue were not a material term of the settlement agreement, there was no express provision for attorneys' fees, and in approving the settlement, the court thus only considered whether the net amount distributed to each plaintiff was fair and reasonable in light of the facts of the case, the minors' specific claims, and recover in similar cases, as required by Robidoux. 2019 WL 2871160, at *3. The court found the "amount of attorneys' fees at issue here is an independent matter, the obligation arising from the retainer agreements between Plaintiffs and their counsel," and would evaluate the request in light of the special duty to safeguard the interests of the minor litigants, as well as the local rule requiring the court to fix the amount of attorneys' fees in an action involving a minor. Id. The court applied California law to evaluate the request for attorneys' fees pursuant to the local rule, and in line with other district courts throughout California. Id. (citations omitted). The court reduced the attorneys' fees from 33% to 25% of the settlement fund. Id. at *4.

1 federal court to use when sitting in diversity and approving the settlement of a minor's state law
2 claims." 638 F.3d at 1179 n.2.  Some district courts have extended the application to state law
3 claims.  See Calderon v. United States, No. 1:17-CV-00040-BAM, 2020 WL 3293066, at *3
4 (E.D. Cal. June 18, 2020) (noting that although Robidoux "expressly limited its holding to cases
5 involving settlement of a minor's federal claims . . . district courts also have applied this rule in
6 the context of a minor's state law claims.") (citations omitted); A.G.A., 2019 WL 2871160, at *2
7 n.1 ("The Ninth Circuit did not express a view on the proper approach for a federal court to use
8 when sitting in diversity and approving the settlement of a minor's state law claims . . . however,
9 the Court has federal question jurisdiction and is exercising supplemental jurisdiction over
10 Plaintiffs' state law claims . . . as the case 'involves' the settlement of Plaintiffs' federal claims,
11 the Court applies the Robidoux standard to the entire settlement.").

## IV.

## DISCUSSION

Here, the Plaintiffs have brought both federal and state law claims, and the Court is exercising supplemental jurisdiction over the state law claims.  Thus, the Court will apply the Robidoux standard when reviewing the settlement.  See A.G.A., 2019 WL 2871160, at *2 n.1; Lobaton v. City of San Diego, No. 15-CV-1416 GPC (DHB), 2017 WL 2298474, at *2 (S.D. Cal. May 26, 2017); Est. of Sauceda v. City of N. Las Vegas, No. 211CV02116GMNNJK, 2020 WL 1982288, at *3 (D. Nev. Apr. 15, 2020) ("The Ninth Circuit has made clear that its standards apply in federal question cases[,] . . . [m]oreover, district courts within the Ninth Circuit have concluded that federal law applies to the entirety of a request to approve a minor's settlement in cases in which the district court exercises federal question jurisdiction and supplemental jurisdiction over additional state law claims., report and recommendation adopted, No. 211CV02116GMNNJK, 2020 WL 2105017 (D. Nev. Apr. 30, 2020).

As noted below, Petitioner proffers that as a result of a lack of evidence supporting the federal causes of action, the parties approached settlement as if this was a medical negligence case.  The Court finds it may properly exercise discretion to proceed despite such proffer.  See Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639–40 (2009) ("With respect to

supplemental jurisdiction in particular, a federal court has subject-matter jurisdiction over specified state-law claims, which it may (or may not) choose to exercise . . . [and] [a] district court's decision whether to exercise that jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary." (citing 28 U.S.C. § 1367(c))).

**A.    The Petition as Supplemented by Briefing Ordered by the Court**

The Court identified deficiencies in the original Petition materials and ordered supplemental briefing. Specifically, the Court, in part, made the following findings in deciding to order supplemental briefing:

> The application materials do not sufficiently identify the nature of the individual causes of action that are being settled, as required by the Local Rules. For example, while the application generally describes the events underlying the claim, the most specific information regarding the causes of action to be settled is the statement that: "G.C. alleged claims for emotional and mental damage from the loss of his father." (ECF No. 62 at 1-2.) Further, the proposed order states differently that "G.C. brought claims against defendants for the wrongful death of his father." (ECF No. 64 at 2.)
>
> The Court finds the Petition has not met the requirements of the Local Rules, particularly when considering the nature of the operative complaint . . . Based on the various causes of action brought by Plaintiffs in various capacities and G.C. particularly in relation to the claims overall, the application materials do not sufficiently describe "the nature of the causes of action to be settled or compromised . . . [nor] the manner in which the compromise amount or other consideration was determined, including such additional information as may be required to enable the Court to determine the fairness of the settlement or compromise." L.R. 202(b)(2). In this regard, the Court further notes the settlement is split between the Defendants as follows: "Naphcare has agreed to pay $25,000.00 and The Kings County Sherrif's [sic] Dept. and the County of Kings have agreed to pay $2,500.00." (ECF No. 62 at 2.) It is additionally difficult for the Court to perform an analysis in the absence of the description of the nature of the causes of action in relation to the differing parties on the claims, and the amounts of settlements.
>
> Again, the petition generally states: "G.C. alleged claims for emotional and mental damage from the loss of his father." (ECF No. 62 at 2.) Then the petition makes the proffer that: "G.C. received no treatment from any physician for any of his mental or emotional injuries and has fully recovered." (ECF No. 62 at 2.) It is unclear how the Court is to accept the proffer of a full recovery of a minor that has received no treatment for any of the mental or emotional injuries alleged. The Court views the petition as mainly arguing the settlement is fair due to this, and due to issues of

> Defendants' liability. However, as presented, the Court cannot perform an analysis of the fairness and reasonableness of the settlement, given the bare assertions and above deficiencies. If no treatment has been received by the minor, the Court must accept that fact, but the Court cannot simply accept proffers such as full recovery in the face of no treatment, without additional information, or supporting caselaw showing the settlement amount is fair, for example, in light of the totality of the circumstances and issues of liability.
>
> In this regard, while not expressly required under the Local Rules, the petition provides no caselaw demonstrating the appropriateness of the settlement amount here. The Ninth Circuit has directed that "[s]o long as the net recovery to each minor plaintiff is fair and reasonable in light of their claims and average recovery in similar cases, the district court should approve the settlement as proposed by the parties." Robidoux v. Rosengren, 638 F.3d 1177, 1181 (9th Cir. 2011). The Petitioner shall provide supporting caselaw to the extent necessary to demonstrate the net recovery is fair and reasonable in light of the average recovery in similar cases, in light of the nature of the causes of action to be settled, and other information necessary to determine the fairness of the settlement.
>
> Finally, the Local Rules also provide the following guidelines for disbursements of money to minors The proposed order avers that: "Pursuant to Petitioner's proposal, the total net settlement shall be deposited into a blocked account that would available [sic] to Plaintiff on his 18th birthday," and the text of the proposed order suggests the parties have requested the Court to order such. (ECF No. 64 at 4.) However, the actual petition makes no mention of the manner of disbursement, and the Court will not rely on a vague statement in the proposed order. Petitioner shall describe the manner of disbursement of the payment to the minor in supplemental briefing, so that the Court can issue an appropriate order of disbursement. See, e.g., Dumas v. City of Elk Grove, No. 2:09-CV-01573-GEB, 2012 WL 2116390, at *1 (E.D. Cal. June 6, 2012) (structuring payments to minors into fixed annuities in blocked accounts payable on eighteenth birthdays); Parson v. City of Bakersfield, No. 107CV01468OWW DLB, 2009 WL 453118, at *1–2 (E.D. Cal. Feb. 23, 2009) (depositing payment to minor into insured account subject to withdrawal only upon authorization of the court until reaching age of eighteen); Lobaton v. City of San Diego, No. 15-CV-1416 GPC (DHB), 2017 WL 2298474, at *3 (S.D. Cal. May 26, 2017) (settlement payment placed in blocked account, with restriction on withdrawal without court order).

(ECF No. 69 at 2-4.) The Court ordered that "Petitioner shall provide supplemental briefing addressing the issues described above, and as required by the Local Rules more generally." (Id. at 4.)

The Court shall summarize the information provided in the application materials,

primarily as set forth in the supplemental briefing.  The Petition identifies G. C. as a minor male who is 13 years of age. (Pl. G.C.'s Suppl. Br. Supp. Mot. ("Suppl.") at 1, ECF No. 70.)  The Petition describes that this case was filed against Kings County and Naphcare under the following facts: Gregory Cantu was an inmate in the King's County jail; G.C. is the natural born son and heir of Gregory Cantu; G.C. alleges that his father suffered from a severe seizure disorder that was not properly monitored or treated by the jail; As a result, on April 15, 2019 Gregory Cantu was found dead in his cell from a seizure; and G.C. alleged claims for emotional and mental damage from the loss of his father.  (Id. at 1-2.)  The Petition describes the causes of action in the FAC, that the Court summarized above. (Id. at 2.)

The Petition descries that the county sources out all medical care to the independent third-party provider Naphcare, and that Naphcare was responsible to diagnose and treat any and all medical conditions that the Decedent may have had.  (Id.)  The Petition proffers that there was no evidence to support the first four claims against the parties, and therefore this case was litigated as a medical negligence case.  (Id.)

The Petition describes that the decedent went to see medical staff at the jail many times, however never disclosed his seizure disorder, nor did he request medication for his seizure disorder.  However, decedent did have a massive seizure while in custody in Arizona at the Maricopa County jail, just prior to his transfer to the Kings County jail.  Decedent was appropriately medicated by staff in the Maricopa County jail, and based on these facts, Plaintiffs alleged that medical staff at the Kings County jail knew or should have known of the decedent's condition, and should have treated the condition with appropriate medication.  (Id.)

The Petition describes that Defendants Naphcare and King's County dispute that they were negligent in any respect, but wish to resolve this case rather than proceed with the cost to proceed to trial.  Specifically, as it relates to liability for Gregory Cantu's death, Defendants contended there was evidence to show that Mr. Cantu never represented to the prison that he had a seizure disorder, and never requested seizure medication, and that while incarcerated, Gregory Cantu did often seek treatment for complaints of foot pain or back pain, but he never sought any type of treatment for any seizure disorder.  Defendants maintain that they properly cared for Mr.

1   Cantu based on his complaints.  (Id.)

2   The Petition proffers that based upon information unearthed during the discovery process, adult Plaintiffs Roger Cantu and Linda Brown have agreed to settle their claims on all causes of action in exchange for a waiver of costs.  As for the minor Plaintiff, Naphcare has agreed to pay $25,000.00 and the Kings County Sherriff's Department and the County of Kings have agreed to pay $2,500.00 to fully resolve G.C.'s claims on all causes of action alleged.  (Id. at 2-3.)  The Petition further proffers that as Naphcare was the party responsible to diagnose and treat any medical conditions, it bears the lion's share of responsibility for the claims alleged by G.C., and "Kings County would rather pay a nuisance value to the Plaintiff rather than proceed with the cost of litigation.  (Id. at 3.)

The Petition also describes that the decedent was in prison for the majority of G.C.'s life and was primarily raised by his mother Maryzol Jones.  However, the Petition also provides that G.C. and the decedent did have a relationship, and G.C. resided with his father and grandparents for one year, but the relationship was impacted by decedent's time in prison.  When the decedent was in prison Plaintiff and his father interacted via the telephone.  The Petition specifically describes that Plaintiff testified that when his father died, he was very sad and cried a lot; and that following up on that question the following exchange occurred: Q. And you still feel sad about your dad being gone?· A.· ·No, not really."  (Id.)  The Petition describes that G.C. testified that he missed his dad, and missed playing video games with him.  The Petition proffers that G.C. also confirmed that he has never seen any medical providers for any emotional or mental condition, and proffers that "based upon the length of time that has elapsed without treatment, and that Plaintiff appears stable, it is not anticipated that Plaintiff will require any future medical treatment for the loss of his father.  (Id.)

As for reaching the terms of the settlement, the Petition proffers that the parties believe this is a fair settlement based on the limited relationship that G.C. had with his father due to his repeated incarceration, defenses that undercut G.C.'s liability claims that would potentially result in a defense verdict, and the lack of any treatment for any emotional injuries G.C. suffered as the result of losing his father.  (Id.)  The Petition proffers that the cost to try medical malpractice

1 cases can exceed $100,000.00; that there is a statutory cap of the recovery of emotional distress
2 damages for state law negligence claims in the amount of $250,000.00; and that the cost and risk
3 associated with trying the case coupled with the fact that decedent did not have any seizures prior
4 to his death in the Kings County jail nor did he inform the jail of his medical condition makes
5 this a case extremely difficult to prove that Naphcare's care and treatment of decedent fell below
6 the medically acceptable standard of care.  Further, as for the amount given by the County
7 Defendants, the Petition notes that the County relied on Naphcare's specialized skill and training
8 and essentially delegated all medical responsibilities to the third-party company.  (Id.)

9 The supplemental materials also provide some caselaw.  However, it is somewhat of
10 limited value, as the Petitioner proffered that "researching the settlement value of this type of
11 case presents issues."  (Id. at 3-4.)  One case provided involved a minor camper with a seizure
12 disorder that drowned in a pool while attending camp, that was not subject to the $250,00.00 cap
13 on general damages, and the jury awarded $500,000.00 plus funeral expenses.  (Id. at 4.)  The
14 supplemental materials also describe three cases that resulted in defense verdicts, not settlement.
15 (Id.)

16 **B.     The Court Finds the Petition Provides Sufficient Information Under the Local Rules and Recommends Granting the Petition**
17

18 Upon review of the supplemental materials, the Court now finds the Petitioner has
19 sufficiently set forth the information required under Local Rule 202, and more generally for the
20 Court to determine whether to approve the settlement.  See Hughey v. Camacho, No. 2:13-CV-
21 02665-TLN-AC, 2019 WL 1208987, at *3 (E.D. Cal. Mar. 14, 2019) ("Plaintiffs have met the
22 procedural requirements of Local Rule 202(b)(2) . . . Plaintiffs have identified the Minor . . .
23 have identified the claims to be settled in the pending action, all relevant background facts, and
24 the manner in which the proposed settlement was determined.").

25 Specifically, the Petition now adequately describes the causes of action to be settled and
26 the manner and reasons underlying the settlement amounts as to the different Defendants.  While
27 the Court retains some previously expressed concerns regarding the somewhat generalized
28 proffer concerning the minor Plaintiff's potential emotional damages, and proffered lack of

1 treatment for such, the Court finds that based on all proffered information in the Petition 2 concerning the facts of the case and the manner in which the settlement amount was reached, and 3 considering the Court's own research as to settlements in similar cases, the Court recommends 4 the settlement be approved.

5 The Court finds the Petition satisfies the requirements of Local Rule 202(c), pertaining to 6 disclosure of attorneys' interests. Specifically, the Petition materials identify that G.C. and his 7 attorneys at Bish & Cutting, APC have an agreement for services provided in connection with 8 the claim giving rise to this petition; the parties have entered into a contingency fee agreement 9 whereby counsel can recover 25% of the gross settlement amount and recover any costs 10 advanced on his behalf; that counsel for G.C. is requesting attorney fees in the amount of 11 $6,875.00 and reimbursement of costs in the amount of $1,532.25; that this leaves a net 12 settlement of $19,092.75 for G.C.; that counsel for G.C. was originally contacted by his 13 grandparents Roger Cantu and Linda Brown regarding claims for the loss of their son; that once 14 it was disclosed that Gregory Cantu had a son, Bish & Cutting, APC, indicated that he was a 15 necessary party, and G.C.'s mother Maryzol Jones entered into a contingency fee agreement with 16 counsel on his behalf; that Bish & Cutting, APC, has not received attorney's fees or other 17 compensation in addition to that requested in this petition; that Bish & Cutting, APC did not 18 become concerned with this matter, directly or indirectly, at the instance of a party against whom 19 the claim is asserted or a party's insurance carrier; that Bish & Cutting, APC is not representing 20 or employed by any other party or any insurance carrier involved in the matter; and that Bish & 21 Cutting, APC does not expect to receive attorney's fees or other compensation in addition to that 22 requested in this petition for services provided in connection with the claim giving rise to this 23 petition. (ECF No. 62 at 2-3.)

24 The Petition also describes that the guardian ad litem, Maryzol Jones, has made a careful 25 investigation as to the responsibility for and the nature and extent of G.C.'s damages; that 26 Petitioner understands that compromise will forever bar and prevent G.C. from seeking further 27 recovery of compensation from the Defendants; and that Ms. Jones agrees that it is in G.C.'s best 28 interests to resolve this matter. (Id. at 3.)

   Additionally, as noted above, the Court ordered Petitioner to address the disbursement of the settlement funds to the minor, and the supplemental materials describe that the settlement amount will paid to the minor by depositing the payment into a federally insured bank account subject to withdrawal only upon authorization of the Court, until reaching age of eighteen. Although not detailing the type of account, the Court finds this to be a mainly acceptable proffer, however, the Court shall recommend the petition be granted with an order that the funds be deposited into a federally insured blocked **interest-bearing** account.

   The Court finds the "net amount distributed to each minor plaintiff in the settlement is fair and reasonable, in light of the facts of the case, the minor's specific claim, and recovery in similar cases." Robidoux, 638 F.3d at 1181-82.  While the caselaw provided in the supplemental materials was not particularly helpful except for largely demonstrating the high award in successful trials versus no recovery in defense verdicts, based on the Court's review of the facts that led to settlement here as to the particular causes of action, and the Court's own research and review of settlements reached in similar actions involving minors, the Court recommends the settlement be approved.

   Turning to caselaw, in Hagan, a minor child and surviving widow brought an action alleging the decedent was "incarcerated at the Butte County Jail, where he was denied medication (Prednisone) needed to treat his asthma; was later transferred to the High Desert State Prison, where he was inadequately treated by incompetent staff; and was eventually flown— much too late—to a hospital, where he died." Hagan v. California Forensic Med. Grp., No. CIV. S-07-1095 LKK, 2012 WL 5397989, at *1 (E.D. Cal. Nov. 2, 2012).  The minor ultimately received two annuities approved in two different motions, with $35,000.00 paid by defendant CFMG, and $15,000 by another defendant, for a total of $50,000.00 for the minor plaintiff, after deduction of attorneys' fees. Hagan v. California Forensic Med. Grp., No. 2:07-CV-1095 LKK AC, 2013 WL 461501, at *1 (E.D. Cal. Feb. 5, 2013), report and recommendation adopted, No. 2:07-CV-1095 LKK AC, 2013 WL 552386 (E.D. Cal. Feb. 12, 2013); Hagan v. California Forensic Med. Grp., 2012 WL 5397989, at *1; see also ECF No. 159 filed therein.

   In Estate of Gautier v. Hickman, et al., No. 2:07-CV-00390-GGH, 2008 LEXIS 49794,

2008 WL 2849095, (E.D. Cal. June 27, 2008), the court approved a settlement with a net recovery of $75,000.00 for the minor plaintiff where the parent decedent suffered multiple diabetic seizures and swung in and out of a hypoglycemic coma in prison for several months in 2005 and into 2006 before he died. See Castro v. California, No. 218CV02115KJMEFB, 2020 WL 68580, at *4 (E.D. Cal. Jan. 7, 2020) (discussing Gautier); Hagan, 2012 WL 5397989 (same). The Hagan court also noted in "an arguably comparable case alleging wrongful death (suicide) following medical malpractice, decedent prisoner's family was awarded a verdict of $75,000," Estate of Turner v. County of San Diego, 6–cv–247–MLH (S.D. Cal. November 15, 2007), and other "comparable cases resulted in large verdicts, and others in zero verdicts," Macon v. City & County of San Francisco, 6–cv–4904–SI (N.D. Cal. August 17, 2007) ($225,000 verdict for decedent prisoner's family, for Section 1983, wrongful death and medical malpractice claim); Van Horn v. Heinrich, 8–cv–1622–LJO (E.D. Cal. July 9, 2010) ($0 for prisoner mother for death of her child during child-birth, alleging Section 1983, medical malpractice and wrongful death). Hagan, 2012 WL 5397989, at *1 n.4; see also Doe ex rel. Scott v. Gill, No. C 11-4759 CW, 2012 WL 1939612, at *2 (N.D. Cal. May 29, 2012) (approving minor's compromise in the net amount of $7,188.85 in a § 1983 case involving the shooting and killing of plaintiff's mother by police officers); Swayzer v. City of San Jose, No. C10-03119 HRL, 2011 WL 3471217 (N.D. Cal. Aug. 5, 2011) (approving minor's compromise for net amount of $2,054.17 in a § 1983 case involving the alleged wrongful death of plaintiff's father during his arrest); Estate of Lopez v. Fresno Community Hosp., No. 1:07cv0752 AWI DLB, 2010 WL 502704 (E.D. Cal. Feb.8, 2010) (approving minor's compromise for net amount of $16,601.92 for each minor plaintiff in case involving death of mother at hospital during labor); De Aguilar v. Northern Railroad Passenger Corp. ("Amtrak"), No. 1:02–cv–6527 LJO GSA, 2009 WL 1035221 (E.D.Cal. Apr.17, 2009) (approving minor's compromise for net amount of $10,618.23 in case involving death of minor plaintiff's step-father); Patino v. Cnty. of Merced, No. 118CV01468AWISAB, 2020 WL 6044039, at *6 (E.D. Cal. Oct. 13, 2020) (recommending net amount of $47,513.67 to be distributed to each minor involving case where parent died of valley fever at the Merced County Main Jail); Armstrong v. Dossey, No. 1:11-CV-01632-SKO,

2013 WL 4676541, at *1, 3 (E.D. Cal. Aug. 30, 2013) (approving settlement of minors' claims for $22,500 and $11,000 respectively, in action involving their father's death and claims of excessive force against officers); Doe ex rel. Scott v. Gill, No. C 11-4759 CW, 2012 WL 1939612, at *1 (N.D. Cal. May 29, 2012) (approving a minor's compromise in the net amount of $7,188.85 where minor's mother was shot and killed by police officers when decedent was under the influence and attempting to hit officer with stolen vehicle); Est. of Alderman v. City of Bakersfield, No. 116CV00994DADJLT, 2019 WL 827623, at *1 (E.D. Cal. Feb. 21, 2019) (in action involving fatal shooting of father, approving settlement in net amount of $22,862.07 to each of two minor plaintiffs).[2]

Attorneys' fees in the amount of twenty-five percent (25%) are the typical benchmark in contingency cases for minors. McCue v. S. Fork Union Sch. Dist., No. 1:10-CV-00233-LJO, 2012 WL 2995666, at *2 (E.D. Cal. July 23, 2012) ("It has been the practice in the Eastern District of California to consider 25% of the recovery as the benchmark for attorney fees in contingency cases for minors, subject to a showing of good cause to exceed that rate."). Given the holding in Robidoux, it may be error for this court to reject the settlement simply because the Court finds that the attorney fees sought are excessive. Velez v. Bakken, No. 2:17-CV-960 WBS KJN, 2019 WL 358703, at *2 n.4 (E.D. Cal. Jan. 29, 2019) (noting holding of Robidoux makes reduction of fees simply for finding them to be excessive error, and additionally finding that attorneys' fees amounting to 46% of the settlement, though higher than benchmark, was "not excessive because of counsel's experience with similar cases, the amount of time counsel spent investigating the claims, and the risk counsel took in pursuing this action on a contingency basis.").

Counsel for Plaintiffs accepted this engagement for a contingency fee of 25%, plus

---

[2] But see Castro v. California, No. 218CV02115KJMEFB, 2020 WL 68580, at *1-2 (E.D. Cal. Jan. 7, 2020) (approving $500,000 to each minor where decedent father "allegedly suffered from mental illness and disability that qualified him for disability medical and mental health services in the state prison system . . . , correctional officers and staff knew or should have known he was at risk of violence due to his cooperation in a criminal investigation" and officers left the cell open and "within minutes," decedent "was stabbed to death by other inmates."); E.S. by & through Gonzalez v. City of Visalia, No. 1:13-CV-1697-LJO-BAM, 2015 WL 6956837, at *1 (E.D. Cal. Nov. 3, 2015) (in action involving fatal shooting by police, approving minor's settlement in total amount of $225,000.00, and net amount of $130,444.83 following deduction of attorneys' fees), report and recommendation adopted, No. 113CV01697LJOBAM, 2015 WL 13215675 (E.D. Cal. Nov. 20, 2015).

1 reimbursement for any costs advanced. The Court does not find the requested attorneys' fees in
2 the amount of $6,875.00, and reimbursement of costs in the amount of $1,532.25, to be
3 excessive. See Velez, 2019 WL 358703, at *2; Robidoux, 638 F.3d at 1181.

4       Accordingly, for the reasons explained above, the Court finds the net amount of
5 $19,092.75 to be distributed to Plaintiff G.C. to be fair and reasonable, and shall recommend
6 granting the petition for approval of the settlement. See Robidoux, 638 F.3d at 1181-82.

**V.**

**RECOMMENDATION AND ORDER**

9       Based on the recovery in the similar cases cited above, the facts of this case, and the
10 minor's specific claims, the Court finds the net amount of $19,092.75 to be distributed to the
11 minor to encompass a fair and reasonable settlement of this action, and recommends granting the
12 petition for compromise of the minor's claims, with an order that the funds be deposited into a
13 federally insured blocked interest-bearing account.

14       Accordingly, IT IS HEREBY RECOMMENDED that:

15     1.    The petition for approval of minor's compromise (ECF Nos. 62, 63, 64, 65, 70),
16         be GRANTED with an order requiring the funds be deposited into a federally
17         insured blocked **interest-bearing** account; and

18     2.    The proposed settlement be APPROVED as fair and reasonable.

19       These findings and recommendations are submitted to the District Judge assigned to this
20 action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 304. Within fourteen
21 (14) days of service of this recommendation, any party may file written objections to the findings
22 and recommendations with the Court and serve a copy on all parties. Such a document should be
23 captioned "Objections to Magistrate Judge's Findings and Recommendations." The District
24 Judge will review the Magistrate Judge's findings and recommendations pursuant to 28 U.S.C. §
25 636(b)(1)(C). The parties are advised that failure to file objections within the specified time may
26 result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 839 (9th Cir. 2014)
27 (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).
28 / / /

Further, IT IS HEREBY ORDERED that the hearing set for January 10, 2024, is VACATED.

IT IS SO ORDERED.

Dated: **December 19, 2023**

UNITED STATES MAGISTRATE JUDGE